# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **BANK OF THE OZARKS,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **NO. 1:11-CV-02576-ODE** |
| **ISHTIAQ A. KHAN, M. SHAILENDRA,** | ) | |
| **and RAHIM SABADIA,** | ) | |
| | ) | |
| **Defendants** | ) | |

_____

## ANSWER, COUNTERCLAIM, AND CROSS CLAIMS
### OF
## DEFENDANTS ISHTIAQ A. KHAN AND RAHIM SABADIA
_____

COMES NOW, Ishtiaq A. Khan and Rahim Sabadia, and herein file this

their Answer, Counterclaim, and Cross Claims and show this Court the following:

### First Defense

Plaintiff has failed to state a claim upon which relief can be granted.

### Second Defense

Plaintiff is barred from recovery under the doctrine of mutual departure.

### Third Defense

Plaintiff is barred from recovery by virtue of novation.

**Fourth Defense**

Plaintiff is barred from recovery for failure of consideration.

**Fifth Defense**

Plaintiff is barred from recovery by virtue of the fraud committed upon

Defendants Khan and Sabadia,  including inducing the execution of the Note.

**Sixth Defense**

Plaintiff is barred from recovery by virtue of the doctrine of waiver.

**Seventh Defense**

Plaintiff is barred from recovery by virtue of the doctrine of estoppel.

**Eighth Defense**

Plaintiff is barred from recovery because it is not a holder in due course, and

the instrument sued upon is subject to Defendants' rights of setoff and recoupment.

**Ninth Defense**

Plaintiff's claims for attorney's fees are barred as an unenforceable penalty.

**Tenth Defense**

Plaintiff is barred from recovery under the doctrine of ratification.

**Eleventh Defense**

Plaintiff has failed to mitigate its damages.

### Twelfth Defense

Defendants respond to the enumerated allegations in Plaintiff's Complaint as follows:

### PARTIES, JURISDICTION, AND VENUE

1.        Admitted.

2.        Admitted.

3.        Defendants are without sufficient information to form a belief as to the truth of the allegations in this paragraph.

4.        Admitted.

5.        Admitted.

6.        Admitted.

### FACTUAL BACKGROUND

7.        Defendants admit to signing Exhibit "A," but are without sufficient information to form a belief as to the truth of any other allegations in this paragraph, including those purporting to characterize the document, or its content.

8.        Denied.

9.        Defendants admit Exhibit "A" contains such a provision, but denies it is applicable, or enforceable.

10.        Defendants deny any funds were extended to them under the Note, or its terms.

11.        Denied.

12.        Denied.

13.        Admitted.

14.        Admitted.

15.        Defendants are without sufficient information to form a belief as to the truth of the allegations contained in this paragraph.

16.        Admitted.

17.        Defendants are without sufficient information to form a belief as to the truth of the allegations contained in this paragraph.

18.        Denied.

19.        Defendants admit to receiving Exhibit "C," but deny any other allegation as to the force, effect, or content of such document, and further deny default, or indebtedness.

20.        Defendants are without sufficient information to form a belief as to the truth of the allegations in the paragraph, and further deny any indebtedness to Plaintiff.

21.      Defendants deny they are in default, and further deny they are in breach of the note.

## CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT – PROMISSORY NOTE

### (Against All Defendants)

22.      Defendants incorporate paragraphs 1-21 as if fully restated herein.

23.      Denied.

24.      Denied.

## COUNT II

## UNJUST ENRICHMENT

### (Against All Defendants)

25.      Defendants incorporate paragraphs 1-21 as if fully restated herein.

26.      Denied.

## COUNT III

## ATTORNEYS' FEES AND EXPENSES PURSUANT TO O.C.G.A. §13-1-11

### (Against All Defendants)

27.      Defendants incorporate paragraphs 1-21 as if fully restated herein.

28.     Defendants admit receiving notice of Plaintiff's intent to claim attorney's fees, but deny liability under O.C.G.A. §13-1-11.

## ALL OTHER ALLEGATIONS

29.     All other allegations contained in Plaintiff's Complaint not specifically admitted are hereby denied.

Wherefore, as to Plaintiff's claims, Defendants deny any indebtedness to Plaintiff, and respectfully pray that this Court dismiss Plaintiff's claims, and for such other and further relief deemed necessary and just.

## COUNTERCLAIM

COME NOW, Defendants Ishtiaq A. Khan, and Rahim Sabadia ("Defendants") and herein file this their Counterclaim for Declaratory Judgment, Setoff and Recoupment, and show this Court the following:

1.     Over the course of several years, Defendant Shailendra engaged in a wide scale scheme to defraud Khan and Sabadia, and as alleged more particularly hereinbelow, to breach his fiduciary duty to Defendants.

2.     Shailendra, at all times relevant hereto, owed fiduciary duties to Khan and Sabadia.

3.      At all times relevant hereto, Park Avenue Bank, acted by and through its officers and employees, including, but not limited to Lee Spahos and Al Hosford ("PAB Officers").

4.      At all times relevant hereto, the PAB Officers were aware of Shailendra's fiduciary duties to Khan and Sabadia.

5.      During the course of the banking relationship between Shailendra and PAB, and prior to the execution of the Note in Exhibit "A," PAB and the PAB Officers were aware of Shailendra's scheme to defraud Khan and Sabadia.

6.      The scheme involved, among other things, the acquisition of property, funded by contributions made by Khan and Sabadia, and, undisclosed to them, loans obtained by Shailendra from PAB, and other banks, secured by acquired property, which funds were used as Shailendra's contributions for his personal benefit.

7.      Specifically, PAB and the PAB Officers, were aware of, aided and abetted, encouraged, and benefitted from, the following:

      a.  The indiscriminate depositing of checks drawn payable to the order of one entity into the account of another entity or individual.  For example:

i.  On or about October 25, 2007, Georgia Transmission delivered to Shi Investments One its check drawn payable to the order of "Shi Investments One, LLC" in the amount of $380,000.00 (the "Georgia Transmission Check"). Shailendra indorsed the Georgia Transmission Check and deposited the Georgia Transmission Check to his personal account at PAB. PAB accepted the deposit, credited Shailendra's personal account for the full amount of the deposit, presented the Georgia Transmission Check to the payor bank for payment, and collected the proceeds of the Georgia Transmission Check and gave the proceeds to Shailendra, all without the knowledge, consent, or approval of the owners of Shi Investments One, LLC, ("Shi One") which included both Khan and Sabadia (through a family trust). Thereafter, Shailendra used the proceeds of the Georgia Transmission Check for his own purposes and not for any purposes associated with Shi One.

ii.  On April 1, 2008, Shailendra deposited to his personal account at PAB a check for $5,000.00 issued by Total Tennis Academy, LLC payable to the order of International Tennis Academy.

   iii.  On September 16, 2008, Shailendra deposited to his personal account at PAB a check for $280,000.00 issued by Sachchidanand Properties, LLC payable to the order of Tanger Indian Creek, LLC.

   iv.  On March 31, 2009, Shailendra deposited to his personal account at PAB a check payable to Shi Investments V (Butts Co.), LLC.

b.  The indiscriminate depositing or other use of checks drawn payable to the order of PAB, for the benefit of someone other than the drawer of the check.  For example:

   i.  On or about November 26, 2004, a check issued by the Sabadia Family Trust for $100,000.00 payable to the order of PAB was deposited into Shailendra's personal account at PAB.

   ii.  On December 15, 2006, a check issued by the Sabadia Family Trust for $500,000.00 payable to the order of PAB was deposited into Shailendra's personal account at PAB.

   iii.  On January 11, 2007, Nafees El Batool drew a check against the account of Sabtech Industries, Inc. in the amount of $200,000.00 payable to the order of PAB, on January 12, 2007, drew two other checks against the account of Sabtech Industries, Inc. in the amounts of $100,000.00 and $200,000.00, respectively, each

payable to the order of PAB, and on January 12, 2007, a check was drawn against the Sabadia Family Trust in the amount of $500,000.00, payable to the order of PAB, and on January 16, 2007, Shailendra deposited all four checks to his personal account at PAB.

iv.  On October 1, 2007, a check drawn against the Pinnacle at Eagles Point, LLC account at Heritage in the amount of $200,000.00 payable to the order of PAB was deposited into Shailendra's personal account at PAB.

v.  On October 18, 2007, a check drawn against the Eagle Stockbridge, LLC account at MidFirst Bank in the amount of $600,000.00 payable to the order of PAB was deposited into Shailendra's personal account at PAB.

vi.  On September 2, 2008, Shailendra deposited a check in the amount of $892,390.00 payable to PAB into his personal account at PAB.

c.  The indiscriminate depositing of checks with missing or unauthorized indorsements.  For example:

i.  On January 5, 2007, at the urging, or at least in concert with the wishes of the PAB Officers, Shailendra transferred $150,000.00

from the Shi Investments Two, LLC account at PAB to cover an overdraft in his personal account at PAB.

ii.  Three days later, on January 8, 2007, at the urging, or at least in concert with the wishes of the PAB Officers Shailendra transferred $230,000.00 from the One Wisteria Place, LLC Money Market Account at PAB to cover another overdraft in his personal account at PAB.

iii.  Again, on February 9, 2007, Shailendra, at the urging, or at least in concert with the wishes of the PAB Officers, transferred $110,000.00 from the Shi Investments Two, LLC account at PAB to to cover an overdraft in his personal account at PAB.

iv.  On February 12, 2007, at the urging, or at least in concert with the wishes of the PAB Officers, Shailendra transferred $175,000.00 from the 21 14th Street Two-Thirds, LLC, d/b/a 21 14th Street One-Third, LLC account to cover an overdraft in his personal account at PAB.

d.  The indiscriminate transferring of funds from account to account to pay loans or other obligations owed by different entities. For example, on February 14, 2007, Shailendra transferred $125,000.00 from the 21

14th Street Two-Thirds, LLC, d/b/a 21 14th Street One-Third, LLC account at PAB to Shailendra's personal account at PAB to pay interest owed on a loan to PCB East Bay 1130, LLC.

e.   The daily transfer of massive amounts of funds by checks, intra-bank transfers, and inter-bank funds transfers (wire transfers), many by telephone or personal contact with bank employees, obviously made for no legitimate business purpose but designed to give the illusion of substantial balances in the accounts and to enable Shailendra to siphon funds out of the accounts for his own personal use.

(1)     During a period of approximately three (3) years, from 2007 – 2010, Shailendra wrote approximately 623 checks out of his personal PAB checking account (ending with x5808)  that were or would have been dishonored and returned for insufficient funds.  However, rather than allow the checks to go unpaid, PAB would notify Shailendra, and instruct, request, or knowingly permit that he use funds owned by another entity he Managed or controlled to transfer sufficient money to his personal account to cover the overdraft.  The total of all deposits

made into the x5808 account just to cover overdrafts was nearly $8 Million.  During the course of this same time frame, over $50 Million was deposited into this same account.

(2)      Attached hereto as Exhibit "1," are examples of some the transfers referenced above.  The accounts where the funds originated were owned by entities in which Shailendra was the Manager, or otherwise controlled the funds.

(3)      At all times relevant hereto, PAB was aware the entities owning the funds used to cover the overdrafts, had other members to whom Shailendra owed fiduciary duties.

f.  Allowing Shailendra to change the names of the account holders on the various accounts maintained by the Plaintiffs and others.

8.      In order to continue his fraudulent scheme, Shailendra needed access to loans, which he was able to obtain as a result of the relationships he created and nurtured with the PAB Officers.

9.      PAB and the PAB Officers, were in possession of various operating agreements indentifying the other members of the various entities, in which Shailendra acted as manager.

10.      PAB and the PAB Officers were aware that the operating agreements prohibited Shailendra from self-dealing, or otherwise personally benefitting from the investments or projects.

11.      At all times relevant hereto, the PAB Officers were aware that Shailendra did not have the funds to repay the Note in this case, or any of the other loans made to entities, guaranteed by Khan and Sabadia.

12.      Neither PAB, nor the PAB Officers, intended for, or expected any, of the Notes executed or guaranteed by Khan and Sabadia to be paid off by the borrowers.  It was intended, and was part of the course of dealing, that all loans would be continuously renewed until such time as the property securing each such loan, including the one Plaintiff has sued upon, was sold.

13.      In addition to the above, on hundreds, if not thousands of occasions, PAB, and the PAB Officers personally assisted Shailendra in making transfers in and out of his personal account and other accounts for the purpose of covering checks written on accounts that otherwise had insufficient funds.

14.     In addition to the above, on hundreds, if not thousands of occasions, the PAB and PAB Officers reversed charges to Shailendra's personal and other accounts for insufficient funds transactions.

15.     During the period of 2007 – 2010, Shailendra's transactions exceeded $50 Million in his personal account at PAB, many of which involved the personal participation of the PAB Officers.

## Count I - Declaratory Relief

16.     Khan and Sabadia incorporate all of the allegations made against others in this Answer, Counterclaim, and Cross Claim, as if fully restated herein.

17.     As a result of the conduct alleged herein, both the Note Plaintiff has sued upon, and the related Deed to Secure Debt, securing such note, were obtained by fraud and deceit.

18.     As a result, Khan and Sabadia seek to cancel and rescind the Note and Deed to Secure Debt, and to have the Note and Deed to Secure Debt declared null and void and without effect.

19.     Plaintiff obtained the Note it has sued upon through an assignment from the Federal Deposit Insurance Corporation as receiver ("FDIC-R") for Park Avenue Bank.

20.     Prior to the assignment referenced above, and in Plaintiff's Complaint, PAB and FDIC-R were informed of, and aware at all times relevant hereto, of the defenses to the Note.

21.     At the time Plaintiff obtained the assignment of the Note from FDIC-R, it was overdue and, based upon its terms in the state of an uncured default.

22.     Based upon the foregoing, Plaintiff is not a holder in due course, and took the Note subject to the defenses Khan and Sabadia could have asserted against PAB.

### Count II - Setoff and Recoupment

23.     Khan and Sabadia incorporate all of the allegations made against others in this Answer, Counterclaim, and Cross Claim, as if fully restated herein.

24.     By virtue of the allegations set forth herein, PAB and the PAB Officers, and PAB, aided and abetted Shailendra in breaching his fiduciary duties to Khan and Sabadia, and otherwise aided and abetted Shailendra in committing fraud against Khan and Shailendra.

25.     The PAB Officers conspired with Shailendra to procure the signatures of Khan and Sabadia on the Note sued upon, and others.   In furtherance of

this conspiracy, the PAB Officers procured breaches of fiduciary duties by Shailendra for the purpose of allowing him to appear to remain solvent, long after it was clear that he was not.

26.     As a result of the fraudulent conduct of the PAB Officers, Khan and Shailendra were harmed, including having been induced to sign the Note and Deed to Secure Debt.

27.     As a result of the conduct of the PAB Officers, acting in concert with Shailendra, Khan and Sabadia assert claims for complete setoff and recoupment against Plaintiff.

## Cross Claims against Defendant Shailendra

## Count I – Contribution

1.     Khan and Sabadia incorporate all of the allegations made against others in this Answer, Counterclaim, and Cross Claim, as if fully restated herein.

2.     n the event Defendants are liable to Plaintiff on the Note, Khan and Sabadia are entitled to recover from Shailendra, his pro rata share of any such judgment actually paid by, or collected from, Khan and Sabadia, pursuant to O.C.G.A. §23-2-71.

## Count II – Breach of Fiduciary Duty

3.        Khan and Sabadia incorporate all of the allegations made against others in this Answer, Counterclaim, and Cross Claim, as if fully restated herein.

4.        Shailendra befriended Khan and Sabadia, and developed a close, personal relationship.  As Khan and Sabadia came to trust Shailendra, he offered himself as a financial and investment advisor.

5.        Shailendra solicited Khan and Sabadia to invest in various real estate projects, some of which would come to be held as tenancies in common, and others would be in limited liability companies, which would in turn own the subject real estate.

6.        Khan and Sabadia (Sabadia's investments were made through two trusts and a limited partnership)  made substantial investments of tens of millions of dollars, as follows:

    **a.**    **Investments made by the Sabadia Family Trust:**

        (1)    Tampa Property Partners

        (2)    Shi Investments One, LLC

        (3)    Shi Investments Two, LLC

        (4)    Shi Investments Three, LLC

      (5)     SR 42 and Harris Drive (Bethlehem Road)

      (6)     Highway 16 and 42, LLC

**b.    Investments made by the Sabadia Family Irrevocable Trust:**

      (1)     Callaway 2297, LLC

      (2)     21 14th Street One-Third, LLC

      (3)     EBD Investment Group, LLC/PCB Eastbay 1130

      (4)     Highway 16 and 42, LLC

      (5)     PCB Four, LLC

      (6)     1400 West Peachtree, LLP

      (7)     Shi Investments Four, LLC

**c.    Investments made by the Sabadia Family Limited Partnership:**

      (1)     1400 Sabadia LLC – 1400 Peachtree L.P.

      (2)     EBD Investment Group, LLC/PCB Eastbay 1130

**d.    Investments made by Ishtiaq A. Khan**

      (1)     East Bay Development

      (2)     Tampa Property Partners

      (3)     Forsyth County (Georgia 400)

      (4)     Jonesboro 24 Acres

      (5)     Kathy Bray Property/Lovejoy

    (6)    PCB East Bay 1130

    (7)    Hampton

    (8)    M. D. Hodges

    (9)    Union City

    (10)    PCB Four, LLC

    (11)    Shi Investments One, LLC

    (12)    McDonough 35, LLC

    (13)    Hudson Bridge

    (14)    Highway 85, Fayette County

7.      In each of the properties or entities listed above, Shailendra was the Manager or Managing member.

8.      By virtue of his position of trust and confidence, and as a Manager and Managing Member, Shailendra owed fiduciary duties to Khan and Sabadia.

9.      Shailendra breached his fiduciary duties, intentionally or otherwise, to Khan and Sabadia by (1) failing to account how invested funds were spent, (2) failing to invest the funds as solicited and/or directed, (3) self-dealing by paying himself commissions and other fees from the projects, (4) converting funds to his own benefit and use, (5) using the real property that was the

subject of the investment to secure personal loans, and (6) failing to service loans as promised.

10.     As a result of the foregoing breaches of fiduciary duty, Khan and Sabadia were harmed inasmuch as each invested millions of dollars with Shailendra for the projects, and executed various bank notes and guarantees, including Exhibit "A" to Plaintiff's Complaint.

## Count III - Fraud

11.     Khan and Sabadia incorporate all of the allegations made against others in this Answer, Counterclaim, and Cross Claim, as if fully restated herein.

12.     The intentional breach of fiduciary duties, as described in Count II above, constitutes actual fraud.

13.     In addition to the allegations above, over the course of several years, Shailendra made many misrepresentations, including the following:

    a.  The kiting of checks resulting in false balances.

    b.  The money solicited from Khan and Sabadia would be used in the particular project that was subject matter of the solicitation.

    c.  Shailendra would properly maintain and keep accessible the books and records of each investment and account for the money solicited.

d.  Shailendra would not use the money for his personal use.

e.  The money invested was safe and secure.

f.  The profits from an earlier investment were rolled into the next investment.

g.  Shailendra's share in any investment would reflect his own pro rata share of actual funds contributed.

h.  Shailendra would not take fees from the investments, and the money or the proceeds generated would be returned to Khan and Sabadia when the projects were completed unreduced by fees paid to Shailendra.

14.     Contrary to the representations made above, which Khan and Sabadia relied upon, Shailendra did not use his own funds for his investments, failed to maintain proper accounting for investments, used invested or loaned funds for his personal use, and took fees and commissions indiscriminantly.

15.     Shailendra knew the representations were false, when made.

16.     Khan and Sabadia justifiably relied on the representations, which were made continuously, and in response to inquiries such as "What is going on with X property."

17.     Whenever Shailendra requested that Khan and Sabadia sign notes, guaranties, or other bank documents, he represented to them, that he would see to it that the loans were taken care, that they would have no personal liability, and had nothing to worry about.

18.     Khan and Sabadia first discovered that Shailendra was not truthful with them in January 2010.  However, the depth and scope of what was going on at PAB, and with the PAB Officers was not initially discovered until September 2010, when documents relating to Shailendra's personal account at PAB was discovered.

19.     As a result of Shailendra's conduct and fraud, Khan and Sabadia have been damaged in an amount to be determined with certainty at trial.

## Count IV – Punitive Damages

20.     Khan and Sabadia incorporate all of the allegations made against others in this Answer, Counterclaim, and Cross Claim, as if fully restated herein.

21.     Based upon the allegations set forth above, and the conduct of Shailendra, which has been willful, wanton, malicious, fraudulent, and with reckless indifference to the consequences, Khan and Sabadia are entitled to

recover punitive damages in an amount to be determined with certainty at trial.

## Count V – Attorney's Fees

22.     Khan and Sabadia incorporate all of the allegations made against others in this Answer, Counterclaim, and Cross Claim, as if fully restated herein.

23.     Shailendra has acted in bad faith, been stubbornly litigious, and has caused Khan and Sabadia unnecessary trouble and expense.  As a consequence, Shailendra is liable for the expenses of litigation and reasonable attorney's fees incurred.

[Signatures on next page]

This the <u>28</u><sup>th</sup> day of September, 2011.

/s/ Ryan Isenberg
Ryan L. Isenberg, Esq.
Georgia Bar No. 384899
Isenberg & Hewitt, P.C.
7000 Peachtree Dunwoody Road
Building 15, Suite 100
Atlanta, Georgia 30328
ryan@isenberg-hewitt.com
(770) 351-4400

/s/ Kevin King
Kevin S. King, Esq.
Georgia Bar No. 421000
7000 Peachtree Dunwoody Road
Building 15, Suite 100
Atlanta, Georgia 30328
kking@kevinsking.com
404-240-2020

Burton V. McCullough, Esq.
Pro Hac Vice
(Application to be filed concurrently with Answer)
California Bar No. 41462
4205 Encinas Drive
La Cañada Flintridge, California 91011
lexchexrex@sbcglobal.net
818-952-5596

Attorneys for Defendants Khan and Sabadia

**Certificate of Service**

This is to certify that I have this day filed the within and foregoing Answer, Counterclaim, and Cross Claims, using the CM/ECF System, which will generate notice to the following counsel for Plaintiff and Defendant Shailendra:

John J. Richard
jrichard@taylorenglish.com

Donald P. Boyle
dboyle@taylorenglish.com

James M. Johnson
jjohnson@knightjohnson.com